UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRENDAN HARRINGTON,

    Plaintiff,

    v.

DC WINERY, LLC *d/b/a* FIRST BATCH HOSPITALITY, *et al.*,

    Defendants.

Civil Action No. 22-689 (TSC)

**MEMORANDUM OPINION**

Plaintiff Brendan Harrington has sued DC Winery, LLC, along with two of its founders and owners, Brian Leventhal and John Stires, for violations of the Fair Labor Standards Act ("FLSA") and the District of Columbia Minimum Wage Act ("DCMWA"). Before the court are Defendants' Motion to Dismiss, ECF No. 25, and Plaintiff's Motion for Conditional Certification and Notice, ECF No. 31. For the reasons set forth below, the court will GRANT in part and DENY in part Defendants' Motion, dismissing certain claims without prejudice and giving Plaintiff leave to amend the Complaint. The court will therefore also DENY Plaintiff's Motion without prejudice, permitting him to again seek conditional certification after filing an Amended Complaint.

**I.    BACKGROUND**

**A. Legal framework**

FLSA and DCMWA codify similar wage protections for workers. Both set a minimum hourly wage, *see* 29 U.S.C. § 206(a); D.C. Code § 32-1003(a), and both create liability for employers who do not pay that wage. 29 U.S.C. § 216(b); D.C. Code § 32-1012(b)(1).

However, both statutes also allow an employer to pay a tipped employee less than minimum wage by taking a "tip credit"—*i.e.*, counting a portion of the employee's tips to satisfy the statutes' minimum hourly wage requirements. *See* 29 U.S.C. § 203(m); D.C. Code § 32-1003(f)–(g). "[T]he tip credit is considered an affirmative defense to a claim of underpayment that Defendants have the burden of proving." *Portillo v. Smith Commons DC, LLC*, 2022 WL 3354730 at *6 (D.D.C. Aug. 13, 2022) (citation omitted).

Under FLSA, a tip credit cannot be applied to an employee's wages unless

> such employee has been informed by the employer of the provisions of [the tip credit] subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m)(2)(A). Likewise, a tip credit cannot be applied to an employee's wages under DCMWA unless:

> (1) The employer has provided the employee with notice of the following, included in the notice furnished pursuant to § 32-1008(c):
>
> > (A) The provisions of [the tipped minimum wage section];
> >
> > (B) If tips are not shared, that the tipped employee shall retain all tips received;
> >
> > (C) If tips are shared, the employer's tip-sharing policy; and
> >
> > (D) The percentage by which tips paid via credit card will be reduced by credit card fees;
>
> (2) If the employer uses tip sharing, the employer has posted the tip-sharing policy; and
>
> (3) All gratuities received by the employee have been retained by the employee, except that this provision shall not be construed to prohibit the sharing of gratuities among employees who customarily receive gratuities.

D.C. Code § 21-1003(g).

If an employer fails to meet any of these requirements, "it loses the ability to invoke the tip credit." *Camara v. Mastro's Restaurants LLC*, 340 F. Supp. 3d 46, 50 (D.D.C. 2018), *aff'd*, 952 F.3d 372 (D.C. Cir. 2020) (citations omitted). And "[e]mployees may sue to recover underpaid wages in violation of these requirements under the Fair Labor Standards Act and the D.C. Minimum Wage Revision Act." *Id.*

B. **Plaintiff's allegations**

At the motion to dismiss stage, the court accepts as true the following allegations. From "approximately February 2020 until December 2021," Plaintiff worked as a bartender at District Winery in Washington, D.C. Compl. ¶¶ 11, 16, 31, ECF No. 1. District Winery is also known as DC Winery, LLC, which in turn is affiliated with corporations founded and owned by Defendants Brian Leventhal and John Stires. *Id.* ¶¶ 16, 19–20. According to the Complaint, Leventhal and Stires act on behalf of those corporations "by making operational and strategic decisions affecting employees, including decisions affecting employee compensation and permitting employees to work." *Id.* ¶¶ 19–20. Plaintiff alleges that during his employment at District Winery, because Defendants claimed the tip credit, he was paid "a subminimum hourly wage plus tips," as were other bartenders and servers. *Id.* ¶¶ 31–32, 35. Specifically, he was paid "$5.05 per hour," which was combined with tips to "bring his effective rate of pay . . . up to the required minimum wage of $15.00 per hour." *Id.* ¶ 36.

The Complaint claims "Defendants violated the tip credit" requirements under FLSA and DCMWA in several ways.

- First, Defendants "failed to inform Plaintiff" and other tipped employees of (a) "the provisions of the tip credit" in each statute, (b) "the amount per hour which Defendants took as a tip credit . . . each time it was changed," and (c) "the operation, accounting, and distribution of the tip pool." *Id.* ¶¶ 44–48, 71–73.

> They likewise "failed to post their tip-sharing policies or other provisions of the [DCMWA] in a conspicuous and accessible location." *Id.* ¶ 74.
>
> - Second, Defendants required Plaintiff and other tipped employees "to contribute tips to a tip pool that included ineligible tip pool participants"—specifically, "bussers, expediters, glass polishers, and winery tour guides." *Id.* ¶¶ 50, 76–78. The "tour guides do not render any services to traditional restaurant and bar customers," and the expediters and glass polishers do not "perform their work in view of customers," "regularly receive tips from customers," or "take orders from customers." *Id.* ¶ 52.
>
> - Third, Defendants required Plaintiff and other tipped employees "to pay for credit card processing fees in violation of the amount permitted to be deducted." *Id.* ¶¶ 55, 79.
>
> - Fourth, Defendants required Plaintiff and other tipped employees "to perform a number of non-tipped duties" like "wiping down tables, setting tables, [and] busing tables," as well as "to work for a subminimum hourly wage while the restaurant was closed and there was no opportunity to earn tips," such that their "non-tipped duties . . . exceeded twenty percent (20%) of their time worked each workweek" and were frequently performed "for a continuous period of time exceeding thirty (30) minutes." *Id.* ¶¶ 57–61, 80–81.

Because Plaintiff alleges that those violations also affected his tipped co-workers, he "brings []his DCMWA claim as a class action . . . under Fed. R. Civ. P. 23," *id.* ¶ 95, and "brings this lawsuit as a collective action under § 216(b) of the FLSA," *id.* ¶ 109.

Since filing the Complaint, Plaintiff has voluntarily dismissed several Defendants. *See* ECF Nos. 24 (Brooklyn Winery LLC, Chicago Winery LLC), 27 (FB Hospitality, LLC). He has also moved to certify a conditional collective action under FLSA, including opt-in Plaintiffs Larisa Paz and Alexandra Scott, encompassing "[a]ll individuals who worked as bartenders or servers for Defendants at any time during the three (3) year period preceding the filing of this lawsuit, and who were paid a direct cash subminimum hourly wage." *See* ECF No. 31 at 4–5; Compl. ¶ 86.

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The court does not assess the truth of what is asserted nor "whether a plaintiff has any evidence to back up what is in the complaint." *Id.* (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court therefore construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). This presumption does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Accordingly, a complaint must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

III.     ANALYSIS

Plaintiff's Complaint suffers from fatal defects that require dismissal in part. However, he requests leave to amend it and remedy any defects. *See* Opp'n to Mot. to Dismiss at 14–15, ECF No. 26. Federal Rule of Civil Procedure 15 directs courts to "freely give leave" to amend a complaint "when justice so requires." "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Granting leave to amend is therefore appropriate "[i]n the absence of any apparent or declared reason" to deny it, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* Defendants oppose any amendment but do not cite any of the relevant factors. *See* ECF No. 28 at 9–10. They consequently have not carried their burden for demonstrating why leave should be denied, *see Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 31 (D.D.C. 2012), and the court will grant it.

A. **Personal jurisdiction over Leventhal**

Defendants contend that the court lacks both general and specific personal jurisdiction over defendant Brian Leventhal. General personal jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit," whereas specific personal jurisdiction requires an "affiliation between the forum and the underlying controversy." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56 (D.C. Cir. 2017) (citation omitted). D.C. Code § 13-422 authorizes general personal jurisdiction "over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia." And in relevant part, D.C. Code § 13-423 authorizes specific personal

jurisdiction "over a person . . . as to a claim for relief arising from the person's . . . (1) transacting any business in the District of Columbia."

Because Plaintiff did not address Defendants' argument that the court lacks specific personal jurisdiction over Leventhal, the court treats that argument as conceded. *Stubbs v. L. Off. of Hunter C. Piel, LLC*, 148 F. Supp. 3d 2, 4 (D.D.C. 2015), *aff'd,* 672 F. App'x 3 (D.C. Cir. 2016) ("[I]t is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). The only question before the court, therefore, is whether there is general personal jurisdiction over Leventhal.

As to general jurisdiction, the Complaint does not allege that Leventhal is domiciled in the District of Columbia. Plaintiff attempts to remedy that omission by citing (1) Leventhal's LinkedIn profile, which lists (without a date) his general location as Washington, D.C., and (2) a 2018 newsletter article in which Leventhal stated that he resided in the District. But even if the court were to look beyond the pleadings at that information, it does not show that Leventhal was in fact domiciled in the District when the Complaint was filed. Plaintiff also relies on the general jurisdiction standard for corporations—*i.e.*, that they maintain such "continuous and systematic general business contacts" that they can be considered at home in a jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984). That argument fails on its own terms. Plaintiff's allegations that Leventhal is the "co-founder and co-owner of First Batch Hospitality" in the District, and that he is generally involved in "making operational and strategic decisions affecting employees," *see* Compl. ¶¶ 19, 29, are not specific enough to establish sufficiently continuous and systematic contacts here. As a result, there is no

basis for personal jurisdiction over Leventhal. However, because amended pleadings could cure that deficiency, the court will permit Plaintiff to amend his Complaint.

### B. Employer-employee relationship

Next, Defendants argue that Plaintiff has not alleged an employer-employee relationship with Brian Leventhal or John Stires. Both FLSA and DCMWA permit individual liability against "employer[s]." *See* 29 U.S.C. § 207(a)(1); D.C. Code §§ 32-1003(c). Both statutes define "employer" similarly and have been interpreted in the same way. *See* 29 U.S.C. § 203(d); D.C. Code §§ 32-1002(3); *see, e.g.*, *Bonilla v. Power Design Inc*, 201 F. Supp. 3d 60, 65 (D.D.C. 2016). In this Circuit, courts look to the "economic reality" to determine whether an entity qualifies as an employer, such as whether it "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001). This is a fact-intensive inquiry, which means that it is "no easy task" to secure dismissal at the pleadings stage based on failure to allege that a defendant was an employer. *Harris v. Med. Transportation Mgmt., Inc.*, 300 F. Supp. 3d 234, 243 (D.D.C. 2018). Courts have only dismissed on those grounds "when the plaintiff failed to allege *any* facts that would support the inference that the defendant had any control over the employment relationship." *Id.*

Although Plaintiff's allegations regarding Leventhal and Stires's status as employers are threadbare, they suffice to survive a motion to dismiss. This court's decision in *Al-Quraan v. 4115 8th St. NW, LLC*, 113 F. Supp. 3d 367 (D.D.C. 2015), provides an instructional contrast. In that case, there were "no allegations that [the defendant] had any involvement in managing employee work schedules or conditions of employment, maintained any employment records, or had the power to hire and fire Plaintiff or any other employees." *Id.* at 370. Here, however, the

Complaint specifically states that Leventhal and Stires each "mak[e] operational and strategic decisions affecting employees, including decisions affecting employee compensation and permitting employees to work at First Batch Hospitality." Compl. ¶¶ 19–20. To be sure, the Complaint does not allege much beyond that, and Plaintiff will need greater evidence and specificity with respect to the "economic reality" factors at the summary judgment stage. But for now, the inference that Leventhal and Stires both qualify as employers for purposes of FLSA and DCMWA is plausible, and the court will therefore deny Defendants' motion to dismiss the claims against them.

### C. Plausibility of claims

Finally, Defendants challenge, from several angles, the factual sufficiency of Plaintiff's allegations that they violated FLSA and DCMWA. All but one of those challenges fail.

1. Stires and Leventhal's actions

First, Defendants assert that "there are no factual allegations to suggest that either [Stires or Leventhal] made a single decision affecting the compensation or working conditions of any District Winery employee." Memo. in Support of Mot. to Dismiss at 14, ECF No. 25-1 ("MTD"). But that assertion is directly contradicted by the Complaint, which, as already noted, alleges that Stires and Leventhal made "operational and strategic decisions affecting employees, including decisions affecting employee compensation." Compl. ¶¶ 19–20. While that allegation is a thin reed on its own, it does support Plaintiff's claim that Stires and Leventhal were involved in making some of the policies of which Plaintiff complains. *See id.* ¶¶ 50, 55–56, 58, 76–77, 79–80, 82. Construing the Complaint in Plaintiff's favor and granting him all reasonable inferences, therefore, the court concludes that the allegations of Stires and Leventhal's involvement could give rise to their liability.

2. <u>Hours worked</u>

Second, Defendants argue that Plaintiff has not adequately identified the extent of his underpayment or the number of hours he performed untipped work. MTD at 14–16. As a general matter, "although it might aid an FLSA defendant to know the actual number of [undercompensated] hours that the plaintiff claims to have worked, that information is not necessary to put the defendant on notice about the nature of the plaintiff's claim." *Galloway v. Chugach Gov't Servs.*, 199 F. Supp. 3d 145, 150 (D.D.C. 2016). That said, the Complaint alleges very little beyond the fact that Plaintiff (and other coworkers) "regularly and frequently" performed non-tipped duties "exceed[ing] twenty percent (20%) of their time worked during each workweek . . . for a continuous period of time exceeding thirty (30) minutes." Compl. ¶¶ 57–61. According to Plaintiff, those time periods happen to be exactly the thresholds for FLSA and DCMWA violations. *Id.* As a result, his allegations closely resemble "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quotation omitted). Still, they at least distinguish this case from others where there were no allegations supporting a claim that an employee's wages had not matched their hours worked. *See, e.g.*, *Akinsinde v. Not-For-Profit Hosp. Corp.*, 216 F. Supp. 3d 33, 42 (D.D.C. 2016). And the Supreme Court has cautioned that a lack of perfect clarity regarding the quantity of uncompensated work should not defeat FLSA's broad remedial goals. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016). The court will therefore not dismiss Plaintiff's claim on that basis.

3. <u>Credit card tips and tip pools</u>

Third, Defendants argue that their withholding portions of tips to offset credit card transaction fees, along with requiring servers and bartenders to participate in a tip pool with individuals who "do not regularly or customarily receive tips," cannot violate FLSA or DCMWA.

Plaintiff's allegations regarding the portions of tips withheld to offset credit card transaction fees are inadequate. Defendants argue that the law permits employers to withhold that offset, MTD at 17, a fact that Plaintiff's Complaint acknowledges at least with respect to FLSA, Compl. ¶ 55 (noting "the amount permitted to be deducted under the FLSA"), and that the DCMWA expressly contemplates, *see* D.C. Code § 32-1003(g)(2) (requiring notice of the "percentage by which tips paid via credit card will be reduced by credit card fees"). The main problem with the Complaint, then, is that it fails to allege what percentage of tips Defendants deducted to offset credit card fees—it simply states that the amount was in excess of what is legally permitted. Compl. ¶¶ 55, 79. That "legal conclusion couched as a factual allegation" cannot support a plausible claim that Defendants violated FLSA and DCMWA in this respect, so the claim must be dismissed. *Iqbal*, 556 U.S. at 678. Moreover, Plaintiff does not address Defendants' arguments on this score and therefore concedes them. *See Stubbs*, 148 F. Supp. 3d at 4. The court will allow Plaintiff to amend his allegations, however, affording him an opportunity to provide greater specificity (even if estimated) about the amount of tips withheld to cover credit card fees, or at the very least to allege a basis for his contention that they were excessive.

As for the other alleged participants in Plaintiff's tip pool, the Complaint provides enough supporting detail to state a plausible claim. An employer may require "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A). "To determine whether an employee customarily and regularly receives tips, so as to allow her to share in another's tips, courts typically look to 'the extent of an employee's customer interaction.'" *Camara*, 340 F. Supp. 3d at 50 (quoting *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 192–93 (5th Cir. 2015)). Federal regulations also provide that the definition of

tipped employees includes those whose work "directly supports the tip-producing work, if the directly supporting work is not performed for a substantial amount of time." 29 C.F.R. § 531.56(f)(1)(ii). Plaintiff adequately alleges that Defendants required Plaintiff to share tips with employees who did not meet those definitions. The Complaint identifies specific allegedly ineligible classes of workers who nonetheless participated in the tip pool, such as "expediters, glass polishers, and winery tour guides," Compl. ¶ 53, and provides some information about their duties and customer interaction to suggest that they do not meet the necessary criteria, *id.* ¶¶ 51–53. Of course, Defendant may gather evidence to rebut those allegations. But given the basic sufficiency of Plaintiff's pleadings, the "fact-intensive inquiry" of "[d]etermining whether an employee is one who 'customarily and regularly receives tips,'" *Montano*, 800 F.3d at 194, is more appropriately undertaken at the summary judgment stage.

  4. Lack of notice

Fourth and finally, Defendants argue that Plaintiff's allegations regarding the required notice of tip pool policies are contradictory. Specifically, Defendants claim that Plaintiff's allegation that they failed to provide notice of their policies contradicts Plaintiff's "detailed recitation of the parameters of District Winery's alleged tip pool." MTD at 18. But the two are easily reconciled: Plaintiff could have learned about the tip pool policies from a source besides his employer, such as his fellow employees. Thus, while "conflicting allegations . . . cannot be presumed true," *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 109 (D.D.C. 2010), there is no such conflict here, and therefore no basis for dismissal.

### IV.   CONCLUSION

For the reasons set forth above, the court will GRANT in part and DENY in part Defendants' Motion to Dismiss, ECF No. 25. However, the dismissal shall be without prejudice, and the court will permit Plaintiff to file an amended complaint within 45 days. Accordingly, the

court will also DENY without prejudice Plaintiff's Motion for Conditional Certification and Notice, ECF No. 31.  After filing an Amended Complaint, Plaintiff may renew his motion.  A corresponding Order will accompany this Memorandum Opinion.

Date: August 29, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge