## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **Brendan Harrington, individually and on behalf of all others similarly situated,** | |
| *Plaintiff,* | |
| **v.** | **Civil Case No. 22-689 (TSC)** |
| **FB Hospitality, LLC; Brooklyn Winery LLC; DC Winery, LLC; and Chicago Winery, LLC, collectively d/b/a First Batch Hospitality; Brian Leventhal; and John Stires, individually.** | **PLAINTIFF'S AMENDED COLLECTIVE ACTION COMPLAINT** |
| *Defendants.* | |

### PLAINTIFF'S AMENDED COLLECTIVE ACTION COMPLAINT

Brendan Harrington, individually and on behalf of all others similarly situated, files this Complaint against DC Winery, LLC; Brian Leventhal; and John Stires (collectively, "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended ("FLSA") and the District of Columbia Minimum Wage Revision Act, D.C. Code § 32-1001 *et seq.* ("DCMWA").

### I.     NATURE OF SUIT

1.     This is a collective and class action brought by Plaintiff on behalf of himself and all others similarly situated under the FLSA and the DCMWA.  The putative FLSA Collective Members are all individuals employed by Defendants as servers and bartenders and who were paid a direct cash subminimum hourly wage. The DCMWA Class Members are all individuals employed by Defendants as servers and bartenders in the District of Columbia and who were paid a direct cash subminimum hourly wage.

2.     Plaintiff and the other similarly situated individuals he seeks to represent are

current and former servers and bartenders, who are tipped employees under the FLSA and the DCMWA.

3.      In 1938, Congress passed the FLSA in an attempt to eliminate low wages, long hours, and provide American workers with a wage that would support a minimum standard of living.[1] The purpose of the FLSA is to provide "specific minimum protections to individual workers and to ensure that each employee covered by the Act … receive[s] '[a] fair day's pay for a fair day's work' and [is] protected from 'the evil of "overwork" as well as "underpay." *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981).

4.      Similarly, the District of Columbia passed its Minimum Wage Act to ensure that workers "be paid at wages sufficient to provide adequate maintenance and to protect health." *See* D.C. Code § 32-1001. In passing the DCMWA, the District of Columbia recognized that "[a]ny wage that is not sufficient to provide adequate maintenance and to protect health impairs the health, efficiency, and well-being of persons so employed, constitutes unfair competition against other employers and their employees, threatens the stability of industry, reduces the purchasing power of employees, and requires, in many instances, that their wages be supplemented by the payment of public moneys for relief or other public and private assistance. Employment of persons at these insufficient rates of pay threatens the health and well-being of the people of the District of

---

[1] *See Martinez v. Behring's Bearings Service, Inc.*, 501 F.2d 104, 107 (5th Cir. 1974) ("[t]here can be no doubt that the purpose of the FLSA was and is to protect interstate employees by denying their employers the tool of toying with workers' wages when battling in the competitive market."); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162, 183 L. Ed. 2d 153 (2012) ("Congress enacted the FLSA in 1938 with the goal of protect[ing] all covered workers from substandard wages and oppressive working hours."); *Labelle v. Dreamogawa, Inc.,* Civil Action No. 19-1676 (CKK), 2020 U.S. Dist. LEXIS 197179, at *7 (D.D.C. 2020) (quoting *Slaughter v. Alpha Drugs, LLC*, 907 F. Supp. 2d 50, 54 (D.D.C. 2012) (citing *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010))) ("'the purpose of the FLSA [is] to assure to the employees of a covered company a minimum level of wages. . .'").

Columbia and injures the overall economy." *Id.*

5.      The FLSA and the DCMWA require employers to compensate employees at a rate of not less than the minimum wage. *See* 29 U.S.C. § 206(a); D.C. Code § 32-1003(a). However, for tipped employees, employers may take a "tip credit" against payment of the full minimum wage, using a portion of an employee's tips to satisfy the employer's minimum wage obligations to the employee. *See* 29 U.S.C. § 203(m); D.C. Code § 32-1003(f)-(g). The use of the tip credit results in a huge savings to employers who, by utilizing the tip credit, are relieved of their obligation to pay the full minimum wage and can supplement employees' wages with tips.

6.      Here, Defendants have a policy and practice of paying all their employee servers and bartenders, including Plaintiff, subminimum hourly wages under the tip credit provisions of the FLSA. However, Defendants failed to follow federal law and violated Section 203(m) – an affirmative defense – in that Defendants unlawfully (1) failed to inform Plaintiff and FLSA Collective Members of the tip credit pursuant to 29 U.S.C. § 203(m); (2) did not allow Plaintiff and FLSA Collective Members to retain all of their tips[2]; (3) required Plaintiff and FLSA Collective Members to contribute a portion of their tips to an illegal tip pool; (4) required Plaintiff and FLSA Collective Members to perform non-tipped work *unrelated* to Plaintiff and Collective Members' tipped occupation (i.e., "dual jobs"); and (5) required Plaintiff and FLSA Collective Members to perform non-tipped work that, although related to Plaintiffs and FLSA Collective Members' tipped occupation, exceeded twenty percent (20%) of their time worked during each workweek, was performed for a continuous period exceeding thirty (30) minutes, or both.

7.      Moreover, Defendants violated the DC Minimum Wage Act by paying servers and

---

[2] Whenever the term "tip" is used in this Complaint, it shall carry the definition assigned to it under 29 C.F.R. § 531.52.

bartenders employed at its District of Columbia location, including Plaintiff and DCMWA Class Members, a "tipped minimum wage" (i.e., a subminimum hourly wage prior to accounting for tips) and unlawfully: (1) failing to provide notice to Plaintiff and DCMWA Class Members of the provisions of the DCMWA, including the percentage of tips withheld to offset credit card processing fees; (2) not allowing Plaintiff and DCMWA Class Members to retain all of their tips ; (3) requiring Plaintiff and DCMWA Class Members to contribute a portion of their tips to an illegal tip pool; (4) requiring Plaintiff and DCMWA Class Members to perform non-tip-producing work while paying Plaintiff and DCMWA Class Members a "tipped minimum wage."

8.      Defendants' illegal practices in violation of the FLSA and the DCMWA have resulted in a forfeiture of the "tip credit." Consequently, Defendants are liable to Plaintiff and the Putative Collective and Class Members for the full minimum wage for every hour worked during the statutory time period plus all other statutory damages provided for under the FLSA and the DCMWA.

9.      Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this action as a collective action under the FLSA to recover unpaid wages, misappropriated tips, liquidated damages, attorneys' fees, and costs on behalf of himself and all others similarly situated.[3]

10.      Because there are other putative class members who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation practices and policies, Plaintiff also brings this action as a Fed. R. Civ. P. 23 class action under the DC Minimum Wage

---

[3] *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) (discussing the purpose of the FLSA collective action giving "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and benefitting the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity").

Act, D.C. Code § 32-1008(a)(1)(C)(iii), to recover unpaid wages, liquidated damages, attorneys' fees, and costs on behalf of himself and all other employees similarly situated.

## II.   PARTIES

11.     Plaintiff, Brendan Harrington, is an individual and resident of Washington, DC. Plaintiff was employed by Defendants as a bartender within the three-year period preceding the filing of this lawsuit. At all relevant times mentioned, Plaintiff was an "employee" of Defendants as defined by the FLSA. Plaintiff has consented to be a party-plaintiff to this action as indicated by the notice of consent that will be filed with the Court.

12.     The Putative Collective Members under the FLSA (the "FLSA Collective") are all individuals who worked as servers and bartenders for Defendants in the District of Columbia at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage. The FLSA Collective Members will "opt in" pursuant to the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b). The FLSA Collective Members include all individuals who file a consent to join this lawsuit.

13.     The Rule 23 Class Members under the DCMWA (the "DCMWA Class") are all individuals who worked as servers and bartenders for Defendants in the District of Columbia at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage.

14.     Defendant, DC WINERY LLC, is a limited liability company formed under the laws of the District of Columbia and doing business as "District Winery" in Washington, D.C.  with its principal executive office located at 385 Water Street SE, Washington, DC 20003. Defendant DC Winery has been served and has already appeared in this matter.

15.     Defendant Brian Leventhal, an individual, is individually liable as an "employer" as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d). Upon information and belief, Brian Leventhal is co-founder and co-owner of First Batch Hospitality. Brian Leventhal acts directly or indirectly in the interest of First Batch Hospitality in relation to its employees (including Plaintiffs) by making operational and strategic decisions affecting employees, including decisions affecting employee compensation and permitting employees to work at First Batch Hospitality. Upon information and belief, Brian Leventhal is currently a resident of the District of Columbia and was at the time of the original filing of this Complaint.

16.     Defendant John Stires, an individual, is individually liable as an "employer" as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d). Upon information and belief, John Stires is co-founder and co-owner of First Batch Hospitality. John Stires acts directly or indirectly in the interest of First Batch Hospitality in relation to its employees (including Plaintiffs) by making operational and strategic decisions affecting employees, including decisions affecting employee compensation and permitting employees to work at First Batch Hospitality. Upon information and belief, John Stires is a resident of the District of Columbia and was at the time of the original filing of this Complaint.

### III.    JURISDICTION AND VENUE

17.     The Court has both general and specific personal jurisdiction over each Defendant. Upon information and belief, at the time of filing the initial Complaint, all three Defendants were residents of the District of Columbia. Moreover, the facts giving rise to the claims asserted in this lawsuit arise from Defendants' employment of individuals, including Plaintiff, who worked for Defendants in the District of Columbia.

18.     This Court has subject-matter jurisdiction over this matter, which arises primarily under federal law. Specifically, this Complaint asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* Therefore, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

19.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the District of Columbia Minimum Wage Revision Act ("DCMWA"), D.C. Code § 32-1001 *et seq.* claims because these non-federal claims arise from a common nucleus of operative facts such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

### IV.    COVERAGE

21.     Defendants constitute an enterprise that collectively conducts business and employment practices in the District of Columbia. Each of the named Defendants consented to, authorized, and/or ratified the acts alleged herein and is a joint employer of Plaintiff and Collective Members within the meaning of 29 C.F.R. § 791.2.

22.     At all relevant times, Defendants have each been an "employer" or are "joint employers" of Plaintiff, the FLSA Collective Members, and the DCMWA Class Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and the DC Minimum Wage Act, D.C. Code § 32-1002(3).

23.     At all relevant times, Defendants have acted directly or indirectly in the interest of an employer with respect to Plaintiff, the FLSA Collective Members, and the DCMWA Class Members.

24.     At all relevant times, Defendants have been an "enterprise" within the meaning of

section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Defendants have been engaged in the performance of related activities for a common business purpose—namely, operating a restaurant winery hospitality business where Plaintiff, the FLSA Collective Members, and the DCMWA Class Members were employed to work.

25.     At all relevant times, Defendants have each individually and collectively been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 C.F.R. § 779.22 and Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

26.     Specifically, Defendants are engaged in the restaurant and winemaking business in the District of Columbia. Defendants employ persons who handle or otherwise work on goods that have been moved in or produced for commerce. Plaintiff, FLSA Collective Members, and DCMWA Class Members waited on customers, took drink orders, prepared drinks using liquor bottles and garnishes, restocked restaurant and bar inventory, processed credit card payments, answered questions regarding the menu, removed dinnerware from tables, and performed other tasks.

27.     At all relevant times, Plaintiff, FLSA Collective Members, and DCMWA Class Members were individual "employees" (as defined in the FLSA, 29 U.S.C. § 203(e)(1), and the DCMWA, D.C. Code § 32-1002(2)) of Defendants who are engaged in commerce or in the

production of goods for commerce as required by the FLSA and the DCMWA. *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 326-29 (5th Cir. 1993); *see also Reagor v. Okmulgee County Family Res. Ctr., Inc.*, 501 Fed. Appx. 805, 808-9 (10th Cir. 2012). Specifically, as part of their employment, Plaintiff, the FLSA Collective Members, and the DCMWA Class Members handled food and other food service items that were purchased across state lines or traveled in interstate commerce, or both. In addition, while employed by Defendants to work as bartenders and servers at its restaurants, Plaintiff, the FLSA Collective Members, and the DCMWA Class Members served customers who were traveling from out-of-state or across interstate lines. Finally, Plaintiff, the FLSA Collective Members, and the DCMWA Class Members regularly and frequently processed interstate credit card transactions during every shift they worked.

## V.    FACTS

28.    From approximately February 2020 until December 2021, Defendants employed Plaintiff Brendan Harrington to work at Defendants' restaurant located at 385 Water Street SE, Washington, DC 20003. During his employment, Defendants paid Plaintiff a subminimum hourly wage plus tips.

29.    Defendant employed Plaintiff and other individuals as bartenders and servers within the three (3) year period preceding the filing of this lawsuit and paid them all a subminimum wage per hour prior to accounting for the receipt of earned tips.

30.    As part of the payment scheme Defendants used to compensate their employees, Defendants paid Plaintiff, the FLSA Collective Members, and the DCMWA Class Members a subminimum hourly wage while purportedly utilizing the tip credit as an affirmative defense to Defendants' obligation to pay the full minimum wage as set forth in the FLSA and DCMWA.

31.     The use of the tip credit results in huge savings to Defendants because Defendants compensate Plaintiff, the FLSA Collective Members, and the DCMWA Class Members at a significantly reduced subminimum hourly wage—with customers bearing the large burden of compensating Plaintiff, the FLSA Collective Members, and the DCMWA Class Members with tips.

32.     Defendants imposed a tip credit upon all their tipped employees (e.g., servers and bartenders), including Plaintiff, the FLSA Collective Members, and the DCMWA Class Members.

33.     For instance, during the three-year period preceding the filing of this lawsuit, Defendants paid Plaintiff $5.05 per hour, which is less than the minimum wage required by the DCMWA and the FLSA. Defendants then took the maximum tip credit permitted under the DCMWA of $10.15 per hour to offset Plaintiff's subminimum hourly wage and bring his effective rate of pay, with tips included, up to the required minimum wage of $15.00 per hour.

34.     Because Defendants paid Plaintiff, the FLSA Collective Members, and the DCMWA Class Members less than minimum wage, Defendants will be liable for violating the minimum wage provisions of the FLSA and DCMWA unless Defendants assert and prove their entitlement to assert an affirmative defense known as the tip credit.

35.     However, Defendants violated the tip credit—an affirmative defense—and therefore, Defendants cannot rely on the tip credit as a defense to the payment of minimum, wage.

**Factual Allegations Relating to Fair Labor Standards Act Violations**

36.     Under the FLSA, an employer must prove its entitlement to take a tip credit in order to rely on tips to supplement a tipped employee's wages. "What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) . . . you may

obtain a . . . credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681 (D. Md. 2012) (quoting, *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977). "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002)).

37.     The tip credit—an affirmative defense to the payment of minimum wage— requires an employer to show compliance with the specific requirements for taking a tip credit, including: 1) the employer must inform the employee that it will take a tip credit; and 2) the employer must allow its tipped employees to retain all the tips they receive, except those tips included in a lawfully administered tip pool. *See* 29 U.S.C. § 203(m).

38.     If the employer fails to adhere to the very specific requirements of the FLSA, the employer loses its right to avail itself of the tip credit. *See e.g., Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) (if the penalty for failing to adhere to the FLSA's notice provisions of the tip credit seems harsh, "it is also true that notice is not difficult for the employer to provide.")

39.     Plaintiff and the FLSA Collective Members have been victimized by Defendants' payment scheme that violates the FLSA. Specifically, Defendants violated Section 203(m), an affirmative defense, by (1) failing to inform Plaintiff and the FLSA Collective Members of the provisions of the tip credit; (2) not allowing Plaintiff and the FLSA Collective Members to retain all of their tips; (3) requiring Plaintiff and the FLSA Collective Members to contribute a portion of their tips to an illegal tip pool; (4) requiring Plaintiff and the FLSA Collective Members to perform

non-tipped work *unrelated* to Plaintiff and the FLSA Collective Members' tipped occupation (i.e., "dual jobs"); and (5) requiring Plaintiff and the FLSA Collective Members to perform non-tipped work that, although related to Plaintiff's and the FLSA Collective Members' tipped occupation, exceeded twenty percent (20%) of their time worked during each workweek, or was performed for a continuous period of time exceeding thirty (30) minutes, or both.

40.     Based upon any one or more of the foregoing, Defendants violated the tip credit provisions of the FLSA, and therefore, Defendants are prevented from utilizing the tip credit as an affirmative defense to the payment of the full minimum wage as required by § 206 of the FLSA.

41.     Defendants failed to inform Plaintiff and the FLSA Collective Members of the provisions of the tip credit, violating condition one of the tip credit. *See* 29 U.S.C. § 203(m); D.C. Code §32-1003; *see also* 29 C.F.R. § 531.59(b), 516.4. If an employer fails to adhere to the FLSA's very specific requirements, it loses its right avail itself of the tip credit. *See Martin*, 969 F.2d at 1323 (stating that if the penalty for failing to adhere to the FLSA's notice provisions of the tip credit seems harsh, "it is also true that notice is not difficult for the employer to provide.")

42.     Effective May 5, 2011, the Department of Labor amended its tip-credit regulations to outline more specific requirements for the notice employers must provide to tipped employees about the tip credit. *See* 29 C.F.R. § 531.59. An employer is not eligible to take the tip credit unless it has informed its employees prior to taking a tip credit of:

   a.   the amount of the cash wage that is to be paid to the tipped employee by the employer;

   b.   the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer;

   c.   the tip credit may not exceed the value of the tips actually received by the employee;

    d.    that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and

    e.    that the tip credit shall not apply to any employee who has not been informed of these requirements in this section. *See* 29 C.F.R. § 531.59.

43.    Here, Defendants failed to give Plaintiff and FLSA Collective Members notice of the tip credit and therefore, Defendants have violated the tip credit defense.

44.    Defendants also failed to provide Plaintiff and FLSA Collective Members notice, in writing, of all the information required by 29 C.F.R § 516.28(a)(3). Specifically, "[t]he amount per hour which [Defendants took] as a tip credit" was not "reported to the [Plaintiff and Collective Members] in writing each time it [was] changed from the amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3); *see also Rafferty v. Denny's, Inc.*, 29 Fla. L. Weekly Fed. C 367 n.22 (11th Cir. 2021) ("[W]e agree that a violation of 29 C.F.R. § 516.28(a)(3) ultimately constitutes a violation of 29 U.S.C. § 203(m). . .").

45.    Finally, Defendants failed to inform Plaintiff and the FLSA Collective Members about the operation, accounting, and distribution of the tip pool. *See* 29 C.F.R. § 531.54(a). Defendants failed to inform Plaintiff and the FLSA Collective Members or reach an agreement on how the tip pool would be distributed or to whom the tip pool would be redistributed. *See Id.* Therefore, Defendants did not redistribute the tip pool upon the basis of any agreement between Defendants and those who contributed to the tip pool (i.e., Plaintiff and the FLSA Collective Members).

46.    Defendants failed to give Plaintiff and FLSA Collective Members notice of the tip credit as required by the FLSA (including notice of the tip pool and written notice of the contents required by the regulations), therefore Defendants cannot rely on tips and assert the tip credit as a defense to its failure to pay Plaintiff and FLSA Collective Members the minimum wage required

by Section 206 of the FLSA.

47.     In addition to Defendants' failure to give Plaintiff and FLSA Collective Members notice of the tip credit, Defendants further violated the tip credit defense by requiring Plaintiff and FLSA Collective Members, while working as servers and bartenders, to contribute tips to a tip pool that included ineligible tip pool participants. Specifically, Defendants required Plaintiff and FLSA Collective Members to contribute tips to a tip pool that was then distributed pursuant to a point system devised by Defendants. Plaintiff and FLSA Collective Members, while working as servers and bartenders, were each allocated ten (10) points to receive tips from the tip pool after each shift. However, from this tip pool, a portion of the tips were also distributed to bussers, expediters, glass polishers, and winery tour guides—who were each allocated five (5) points at the end of each shift to receive tips from the tip pool.

48.     Defendants' employees working as winery tour guides are employed to interact with ticketed guests on winery tours and curated wine tastings. Defendants' ticketed winery tour guests arrive for winery tours and sample flights of wine. Moreover, Defendants' tour guides do not render any services to traditional restaurant and bar customers.

49.     In addition, Defendants' employees who are employed as expediters (or "expos") and glass polishers receive tips from the tip pool. However, neither the expeditors nor the glass polishers perform their work in view of the customers and do not customarily and regularly receive tips from customers. Finally, neither the expediters nor glass polishers take orders from customers and have only very minimal interaction with customers.

50.     Therefore, the expediters, glass polishers, and winery tour guides are not employees who customarily and regularly receive tips, and their inclusion in the tip pool invalidates

Defendants' use of the tip credit toward the minimum wage. *See Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'") (citing 29 U.S.C. 203(m)); D.C. Code § 32-1003(g).

51.     Because Defendants did not fully redistribute all of Plaintiffs and the FLSA Collective Members' tips from the tip pool solely among other customarily and regularly tipped employees, Defendants violated the tip credit and have thus violated the minimum wage as cited in 29 U.S.C. § 206. Therefore, Defendants are disavowed from using the tip-credit as a defense to the payment of the full minimum wage. *See* 29 U.S.C. § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes . . ."); *see also* D.C. Code § 32-1003(f)-(g).

52.     Defendants also retained a portion of tips from Plaintiff and the FLSA Collective Members to pay for credit card processing fees. Based upon information and belief obtained during Plaintiff's employment with Defendants, Defendants unlawfully retained a portion of tips in excess of the actual credit card processing fees Defendants paid and incurred in their transactions and with credit card processer. As a result, Defendants withheld portions of Plaintiff's and the FLSA Collective Members' earned tips in an amount greater than the credit card processing fee in violation of the tip credit, 29 U.S.C. § 203(m)(2)(B), under the FLSA.

53.     Defendants also required Plaintiff and FLSA Collective Members to work for a subminimum hourly wage while the restaurant was closed and there was no opportunity to earn tips. An employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See* 29

C.F.R. § 531.56(e); *see also Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Osman v. Grube, Inc.*, No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation).

54. Specifically, during hours that Defendants were closed and while paying a subminimum hourly wage, Defendants required Plaintiff and FLSA Collective Members to perform nontipped duties unrelated to performing tasks as server or bartender such as taking out the trash, restocking and organizing the inventory room, and other duties unrelated to serving tables or bartending.

55. Defendants illegally paid Plaintiff and FLSA Collective Members a subminimum wage for all hours worked, including the periods during which Plaintiff and FLSA Collective Members were performing nontipped duties unrelated to performing tasks as server or bartender. *See Driver v. Apple Illinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties … such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work").

56. Moreover, Defendants regularly and frequently required Plaintiff and FLSA Collective Members to perform a number of non-tipped duties related to Plaintiff and FLSA

Collective Members' tipped occupation, including but not limited to: wiping down tables, setting tables, busing tables, preparing garnishes, polishing glassware, rolling silverware, and other "side-work."

57.     These non-tipped duties related to Plaintiff and FLSA Collective Members' tipped occupation exceeded twenty percent (20%) of their time worked during each workweek. *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time").

58.     In addition, these non-tipped duties related to Plaintiff and FLSA Collective Members' tipped occupation were performed for a substantial amount of time. Plaintiff and FLSA Collective Members regularly and frequently performed non-tipped duties related to their tipped occupation for a continuous period of time exceeding thirty (30) minutes. *See* 29 C.F.R. § 531.56(f)(4)(ii). An employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20% of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 881 (8th Cir. 2011) (granting deference to the DOL's 20% standard); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly case its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations

Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying defendants' motion to dismiss, explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga. Mar. 26, 2015) ("a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group, LLC*, 2014 WL 10556347, at *4 (M.D. Fla. May 2, 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non- tipped producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

59.     Defendants illegally paid Plaintiff and FLSA Collective Members a subminimum wage for all hours worked, including the substantial amount of time Plaintiff and FLSA Collective Members spent performing nontipped duties related to Plaintiff and FLSA Collective Members' tipped occupation.

60.     Defendants' method of paying Plaintiff and FLSA Collective Members in violation of the FLSA was not based on good-faith and a reasonable belief that its conduct complied with the FLSA. Therefore, an award of liquidated damages is mandatory.

61.     Defendants' method of paying Plaintiff and FLSA Collective Members in violation of the FLSA was willful and was not based on good-faith and reasonable belief that its conduct complied with the FLSA. Therefore, a three-year statute of limitations applies due to the willful

nature of the violations. 29 U.S.C. § 255(a).

62.     During the three-year period prior to this suit, Defendants have employed individuals who performed similar job duties under a similar payment scheme as was used to compensate Plaintiff. Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this action as a collective action under § 216(b) of the FLSA and the DCMWA, D.C. Code § 32-1012 to recover unpaid wages, liquidated damages, attorneys' fees, and costs on behalf of himself and all others similarly situated.

**Factual Allegations Relating to DC Minimum Wage Act Violations**

63.     The DC Minimum Wage Act permits employers to pay an employee who received gratuities a "tipped minimum wage" of as little as $5.00 per hour—an amount below the minimum hourly wage of $15.00—"provided that the employee actually receives gratuities in an amount at least equal to the difference between the hourly wage paid and the minimum hourly wage." *See* D.C. Code § 32-1003(f).

64.     However, to properly rely on and utilize the "tipped minimum wage" as a defense to the payment of minimum wage, the DCMWA sets forth the specific conditions that must be satisfied: 1) the employer must inform the employee that it will take a tip credit pursuant to D.C. Code § 32-1003(f); 2) if the employer uses tip sharing, the employer must post its tip-sharing policy; and (3) the employer must allow its tipped employees to retain all the tips they receive, except those tips included in a lawfully administered tip pool. *See* D.C. Code § 32-1003(g).

65.     If the employer fails to adhere to the requirements of D.C. Code § 32-1003(g), the employer loses its right to pay tipped employees a "tipped minimum wage" (i.e., a subminimum

hourly wage). *See* D.C. Code § 32-1003(g)-(f).

66.     Plaintiff and the DCMWA Class Members have been victimized by Defendants' payment scheme that violates the DCMWA. Specifically, Defendants violated Section 32-1003, by (1) failing to provide notice to Plaintiff DCMWA Class Members of the provisions of the DCMWA; (2) not allowing Plaintiff and DCMWA Class Members to retain all of their tips; (3) requiring Plaintiff and DCMWA Class Members to contribute a portion of their tips to an illegal tip pool; (4) requiring Plaintiff and DCMWA Class Members to perform non-tip-producing work while paying Plaintiff and DCMWA Class Members a "tipped minimum wage" (i.e., a subminimum wage prior to the accounting of tips).

67.     Based upon any one or more of the foregoing, Defendants violated the DC Minimum Wage Act, D.C. Code § 32-1003, and therefore, Defendants are prevented from paying Plaintiff and DCMWA Class Members a "tipped minimum wage." *See* D.C. Code §§ 32-1003(g)-(f).

68.     Defendants failed to inform Plaintiff and the DCMWA Class Members of the provisions of D.C. Code §32-1003(g)(1); *see also* 29 C.F.R. § 531.59(b), 516.4. Therefore, Defendants have lost their right to avail themselves of the tip credit. *See* D.C. Code § 32-1003(g)(1) ("[the "tipped minimum wage"] "shall not apply to an employee who receives gratuities, unless[ t]he employer has provided the employee with notice . . ."); *see also* D.C. Code § 32-1003(f).

69.     Pursuant to the DCMWA, an employer is not eligible to pay an employee a "tipped minimum wage" unless it has informed its employees receiving gratuities of:

      a.   the minimum hourly wage required to be paid by an employer to an employee who receives gratuities;

      b.   If tips are not shared, that the tipped employee shall retain all tips received;

      c.   If tips are shared, the employer's tip-sharing policy; and

      d.  The percentage by which tips paid via credit card will be reduced by credit card fees. *See* D.C. Code § 32-1003(g)(1).

70.     Here, Defendants failed to give Plaintiff and DCMWA Class Members notice of the specific provisions of D.C. Code § 32-1003(1) and therefore, Defendants are not entitled to pay employees a "tipped minimum wage" (i.e., a subminimum hourly wage).

71.     Defendants also failed to post their tip-sharing policies or other provisions of the DC Minimum Wage Act in a conspicuous and accessible location. *See* D.C. Code §§ 32-1009, 32-1003(g)(2).

72.     Because Defendants failed to give Plaintiff and DCMWA Class Members notice of the tipped minimum wage and tip-sharing policies as required by the DC Minimum Wage Act, Defendants cannot pay Plaintiff and DCMWA Class Members a tipped minimum wage under Section 32-1003 of the DCMWA.

73.     In addition to Defendants' failure to give Plaintiff and DCMWA Class Members notice of the tip credit, Defendants further violated the DCMWA by requiring Plaintiff and DCMWA Class Members, while working as servers and bartenders, to contribute tips to a tip pool that included ineligible tip pool participants.

74.     As described above, Defendants required Plaintiff and DCMWA Class Members to contribute tips to a tip pool that was then distributed pursuant to a point system devised by Defendants. However, from this tip pool, a portion of the tips were also distributed to employees who do not customarily receive tips—expediters, glass polishers, and winery tour guides.

75.     Defendants' inclusion of expediters, glass polishers, and winery tour guides in the tip pool invalidates Defendants' use of the tip credit toward the minimum wage. *See* D.C. Code § 32-1003(g)(3). Because Defendants did not fully redistribute all of Plaintiffs and the DCMWA

Class Members' tips from the tip pool solely among other customarily tipped employees, Defendants violated the tipped minimum wage and have thus violated the minimum wage as cited in D.C. Code § 32-1003(a). *See* D.C. Code § 32-1003(f)-(g).

76.     Defendants also retained a portion of the tips from  Plaintiff and DCMWA Class Members to pay for credit card processing fees. However, upon information and belief, Defendants unlawfully retained a portion of Plaintiff's and the DCMWA Class Members' tips in excess of the actual credit card processing fees Defendants paid and incurred in their transactions and with credit card processer.

77.     Because Defendants withheld portions of earned tips in an amount greater than the credit card processing fee; and Defendants never provided Plaintiffs with notice of "[t]he percentage by which tips paid via credit card will be reduced by credit card fees" as required by the DCMWA, Defendants were not entitled to offset employees' earned tips on account of credit card processing fees. D.C. Code § 32-1003(g)(1)(d). Nevertheless, Defendants illegally withheld portions of earned tips to cover credit card processing fees. Therefore, the deduction of credit card processing fees further results in forfeiture of the tip credit under the DCMWA and FLSA.

78.     Furthermore, as described above, Defendants also required Plaintiff and DCMWA Class Members to work for a subminimum hourly wage while the restaurant was closed and there was no opportunity to earn tips. Specifically, during hours that Defendants were closed and while paying a subminimum hourly wage, Defendants required Plaintiff and DCMWA Class Members to perform nontipped duties such as taking out the trash, restocking and organizing the inventory room, and other duties unrelated to serving tables or bartending. Moreover, Defendants regularly and frequently required Plaintiff and Collective Members to perform a number of other non-tipped

duties, including but not limited to: wiping down tables, setting tables, busing tables, preparing garnishes, polishing glassware, rolling silverware, and other "side-work."

79.     Plaintiff and DCMWA Class Members were required to perform these non-tipped duties for a substantial amount of time. The time Plaintiff and DCMWA Class Members spent performing non-tipped duties exceeded twenty percent (20%) of their time worked during each workweek, were performed for a continuous period of time exceeding thirty (30) minutes, or both. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time"); 29 C.F.R. § 531.56(f)(4)(ii).

80.     Defendants illegally paid Plaintiff and Collective Members a "tipped minimum wage" (i.e., a subminimum wage) for all hours worked, including the periods during which Plaintiff and DCMWA Class Members were performing nontipped duties, and thus, unable to earn tips. *See* D.C. Code § 32-1003(f) ("The minimum hourly wage required to be paid by an employer to an employee who receives gratuities ('tipped minimum wage'), provided that the employee actually receives gratuities in an amount at least equal to the difference between the hourly wage paid and the minimum hourly wage").

81.     Based on Defendants' violations of the DC Minimum Wage Act, a three-year statute of limitations applies. *See* D.C. Code §32-1308(c)(1).

82.     During the three-year period prior to this suit, Defendants have employed individuals who performed similar job duties under a similar payment scheme as was used to compensate Plaintiff. Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings

this action as a class action under Federal Rule Civil Procedure 23 as authorized by the DCMWA, D.C. Code § 32-108(a)(1)(C) to recover unpaid wages, liquidated damages, statutory penalties, attorneys' fees, costs, and legal or equitable relied as may be appropriate, on behalf of himself and all others similarly situated. *See* D.C. Code § 32-108(a)(1)(A).

## VI.   FLSA COLLECTIVE ACTION ALLEGATIONS

83.     The foregoing paragraphs are fully incorporated herein.

84.     Plaintiff brings this FLSA claim as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) (the "FLSA Collective Action"). In addition to the claims of the individually named Plaintiff, Plaintiff brings this action as a representative of all similarly situated former and current employees of Defendants. The proposed collective of similarly situated employees ("Class Members") sought to be certified pursuant to the FLSA, is defined as:

> **All individuals who worked as bartenders or servers for Defendants at any time during the three (3) year period preceding the filing of this lawsuit, and who were paid a direct cash subminimum hourly wage.**

85.     FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

86.     Other employees have been victimized by Defendants' common pattern, practice, and scheme of paying employees in violation of the FLSA. Plaintiff is aware of other employees at who were paid in the same unlawful manner as Plaintiff. Plaintiff is aware that the illegal practices or policies of Defendants have been uniformly imposed on other bartenders and servers who worked for Defendants. Specifically, Plaintiff is aware of other bartenders and servers who were not notified of the tip credit, were required to contribute tips to the same tip pool in which Defendants illegally retained a portion of the tips and were required to perform non-tipped duties

for a substantial amount of time.

87.     Plaintiff and FLSA Collective Members have the same pay structure, have the same job duties, were not notified in writing of the tip credit provisions, required to participate in the tip pool from which a portion of the tips were distributed to ineligible participants, were subject to unlawful deductions, and were required to perform non-tipped duties while being paid at the subminimum "tipped wage." Plaintiffs and FLSA Collective Members are all victims of Defendants' unlawful compensation scheme.

88.     Plaintiffs and the Collective Members are all non-exempt for purposes of minimum wage payments under the FLSA.

89.     Defendants' failure to pay minimum wage pursuant to the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Collective Members. Plaintiff's experiences regarding pay is typical of the experiences of the FLSA Collective Members.

90.     Although the exact amount of damages may vary among FLSA Collective Members, the damages for the FLSA Collective Members can be easily calculated by a simple formula. The FLSA Collective Members' claims arise from a common nucleus of facts. Specifically, Defendants' systematic course of illegal conduct in violation of the FLSA's minimum wage requirements caused harm to Plaintiff and FLSA Collective Members.

91.     On information and belief, the number of similarly situated current and former non-exempt employees employed by Defendants exceeds 40 workers. Therefore, there are numerous other similarly situated employees and former employees of Defendants who have been improperly compensated in violation of the FLSA who would benefit from the issuance of court-supervised

notice of the present lawsuit and the opportunity to join the present lawsuit.

### VII.     RULE 23 CLASS ACTION ALLEGATIONS

92.     The foregoing paragraphs are fully incorporated herein.

93.     Plaintiff brings this DCMWA claim as a class action consistent under Fed. R. Civ. P. 23 (the "DCMWA Class Action"). In addition to the claims of the individually named Plaintiff, Plaintiff brings this action as a representative of all similarly situated former and current employees of Defendants. The proposed class of similarly situated employees ("DCMWA Class Members") sought to be certified pursuant to the DCMWA, is defined as:

> **All individuals who worked as bartenders or servers for Defendants in the District of Columbia at any time during the three (3) year period preceding the filing of this lawsuit, and who were paid a direct cash subminimum hourly wage pursuant to the DC Minimum Wage Act.**

94.     Other employees have been victimized by Defendants' common pattern, practice, and scheme of paying employees in violation of the DCMWA. Plaintiff is aware of other employees at who were paid in the same unlawful manner as Plaintiff. Plaintiff is aware that the illegal practices or policies of Defendants have been uniformly imposed on other bartenders and servers who worked for Defendants. Specifically, Plaintiff is aware of other bartenders and servers who were not notified of the provision required by the DCMWA, were required to contribute tips to the same tip pool in which Defendants illegally retained a portion of the tips, and who were required to perform non-tipped duties for a substantial amount of time.

95.     Plaintiff and DCMWA Class Members have the same pay structure, have the same job duties, were not notified of the provisions of the DCMWA, required to participate in the tip pool from which a portion of the tips were distributed to ineligible participants, were subject to unlawful deductions under the DCMWA, and were required to perform non-tipped duties while

being paid at the subminimum "tipped wage." Plaintiffs and DCMWA Class Members are all victims of Defendants' unlawful compensation scheme.

96.     Plaintiffs and the DCMWA Class Members are all non-exempt for purposes of minimum wage payments under the DCMWA. *See* D.C. Code § 32-1004.

97.     Defendants' failure to pay minimum wage pursuant to the DCMWA results from generally applicable policies or practices and does not depend on the personal circumstances of the DCMWA Class Members. Plaintiff's experiences regarding pay is typical of the experiences of the DCMWA Class Members.

98.     Although the exact amount of damages may vary among DCMWA Class Members, the damages for the DCMWA Class Members can be easily calculated by a simple formula. The DCMWA Class Members' claims arise from a common nucleus of facts. Specifically, Defendants' systematic course of illegal conduct in violation of the DCMWA requirements caused harm to Plaintiff and DCMWA Class Members.

99.     On information and belief, the number of similarly situated current and former non-exempt employees employed by Defendants in the District of Columbia exceeds 40 workers. Therefore, there are other similarly situated employees and former employees of Defendants who have been improperly compensated in violation of the DCMWA in the same manner as Plaintiff was compensated as set forth in this lawsuit.

### VIII.   CAUSE OF ACTION NO. 1: MINIMUM WAGE VIOLATIONS UNDER THE FAIR LABOR STANDARDS ACT

100.    The foregoing paragraphs are fully incorporated herein.

101.    Defendants' failure to pay Plaintiff and Collective Members at the full minimum wage rate is a violation of the FLSA's minimum wage requirement. *See* 26 U.S.C. § 206.

102.    During the relevant period, Defendants have violated and are violating the provisions of the FLSA, 29 U.S.C. §§ 206, 215(a)(2), by employing Plaintiff and FLSA Collective Members in an enterprise engaged in commerce or in the production of commerce within the meaning of the FLSA, as aforesaid, and failing to pay such employees at the minimum wage rate.

103.    Defendants failed to pay Plaintiff and FLSA Collective Members the full minimum wage according to the provisions of the FLSA for each hour and workweek that Plaintiff and FLSA Collective Members worked for Defendants during the statutory time period in violation of 29 U.S.C. § 206(a).

104.    In addition, to the extent Defendants intend to rely on the "tip credit" as an affirmative defense to the payment of minimum wage, Defendants have violated the tip credit because Defendants: (1) failed to provide Plaintiff and FLSA Collective Members notice of all items required by Section 203(m); (2) failed to allow Plaintiff and FLSA Collective Members to retain all of their tips; (3) required Plaintiff and FLSA Collective Members to contribute tips to an illegal tip pool; (4) required Plaintiff and FLSA Collective Members to perform non-tipped work *unrelated* to Plaintiff and FLSA Collective Members' tipped occupation; and (5) required Plaintiff and FLSA Collective Members to perform non-tipped work that, although related to Plaintiff and FLSA Collective Members' tipped occupation, exceeded twenty percent (20%) of their time worked during each workweek, was performed for a substantial amount of time exceeding a period of thirty (30) continuous minutes, or both.

105.    Defendants' illegal practices in violation of the FLSA result in Defendants' forfeiture of the tip credit, and therefore, Defendants are precluded from relying on tips to supplement Plaintiff's and the Collective Members' subminimum hourly rate. Consequently,

Defendants are liable to Plaintiff and FLSA Collective Members for the full minimum wage for every hour worked during the statutory time period plus all other statutory damages and penalties provided for under the FLSA. *See* 29 U.S.C. § 206 (federal minimum wage of $7.25 per hour).

106.     At all times relevant, Defendants compensated Plaintiff and Collective Members less than minimum wage. None of the exemptions or defenses provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate, including the tip credit, are applicable to Defendants, Plaintiff, or the Collective Members.

107.     Because there are other putative Collective Members who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this lawsuit as a collective action under § 216(b) of the FLSA to recover unpaid wages, misappropriated tips, liquidated damages, attorneys' fees, and costs on behalf of himself and FLSA Collective Members.

## IX.     CAUSE OF ACTION NO. 2: MINIMUM WAGE VIOLATIONS UNDER THE DC MINIMUM WAGE ACT

108.     The foregoing paragraphs are fully incorporated herein.

109.     During the relevant period, Defendants failed to pay Plaintiff and DCMWA Class Members the minimum wages required by the DC Minimum Wage Act. *See* D.C. Code §§ 32-1003(a)(2), 32-1010(1), 32-1012(a).

110.     Defendants' failure to pay Plaintiff and DCMWA Class Members at the full minimum wage rate is a violation of the DCMWA's minimum wage requirement. *See* D.C. Code § 32-1003(a)(2). Specifically, the DCMWA provides that "the minimum wage required to be paid to any employee by any employer in the District of Columbia shall be $6.60 an hour, or the

minimum wage set by the United States government pursuant to the Fair Labor Standards Act . . . plus $1, whichever is greater." *Id.*

111.    In addition, to the extent Defendants intend to rely on the "tip credit" as an affirmative defense to the payment of minimum wage, Defendants have violated the tip credit because Defendants: (1) failed to provide notice to Plaintiff and DCMWA Class Members of the provisions of the DCMWA; (2) did not allow Plaintiff and DCMWA Class Members to retain all of their tips by making illegal deductions under the DCMWA; (3) required Plaintiff and DCMWA Class Members to contribute a portion of their tips to an illegal tip pool; and (4) required Plaintiff and DCMWA Class Members to perform non-tip-producing work while paying Plaintiff and DCMWA Class Members a "tipped minimum wage" (i.e., a subminimum wage prior to the accounting of tips).

112.    Defendants' illegal practices in violation of the DCMWA have resulted in Defendants' forfeiture of paying Plaintiff and DCMWA Class members a "tipped minimum wage." *See* D.C. Code § 32-1003(g)-(f). Therefore, Defendants are precluded from relying on tips to supplement Plaintiff's and DCMWA Class Members' subminimum hourly rate. *Id.* Consequently, Defendants are liable to Plaintiff and the DCMWA Class Members for unpaid wages, liquidated damages, statutory penalties, attorneys' fees, costs, and legal or equitable relied as may be appropriate, on behalf of himself and all others similarly situated. *See* D.C. Code § 32-108(a)(1)(A).

113.    At all times relevant, Defendants compensated Plaintiff and DCMWA Class Members less than the District of Columbia mandated minimum wage. *See* D.C. Code § 1003(a)(5)(A)(v). None of the exemptions or defenses provided by the DCMWA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are

applicable to Defendants, Plaintiff, or DCMWA Class Members. *See* D.C. Code § 32-1004.

114.    Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this lawsuit as a Fed. R. Civ. P. 23 class action under the DCMWA, D.C. Code §§ 32-1308(a)(1)(C), 32-1012(a), to recover unpaid wages, liquidated damages, statutory damages, attorneys' fees, and costs on behalf of himself and the DCMWA Class Members.

## X.    JURY DEMAND

115.    Plaintiff requests a jury trial for all issues that are properly triable to a jury.

## XI.    PRAYER

116.    Plaintiff, individual and on behalf of the FLSA Collective Members and the DCMWA Class Members prays for judgment against Defendants, jointly and severally, as follows:

    a.  For a declaratory judgment declaring that Defendants willfully violated Plaintiff's rights (and of those who join the suit) under the FLSA and the Rule 23 Class Members under the DC Minimum Wage Act;

    b.  For an order pursuant finding Defendants liable for unpaid wages (including all misappropriated tips) owed to Plaintiff, the FLSA Collective, and the DCMWA Class Members, and for liquidated damages equal in amount to the unpaid wages owed;

    c.  For an order awarding Plaintiff (and those who join in the suit) an amount of pre-judgment interest, as may be appropriate, and post-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

    d.  For an order awarding Plaintiff (and those who join in the suit) all attorneys' fees incurred;

    e.  For an order awarding Plaintiff (and those who join in the suit) all costs and expenses incurred in pursuing this action; and

    f.  For an order granting any such other and further relief as this Court deems just and appropriate.

Respectfully submitted,


By:   /s/ *Drew N. Herrmann*
         Drew N. Herrmann
         (Admitted *pro hac vice*)
         drew@herrmannlaw.com
         Pamela G. Herrmann
         (Admitted *pro hac vice*)
         pamela@herrmannlaw.com
         **HERRMANN LAW, PLLC**
         801 Cherry St., Suite 2365
         Fort Worth, Texas 76102
         Phone: (817) 479-9229
         Fax: (817) 840-5102

         -AND-

         Harold L. Lichten
         (Admitted *pro hac vice*)
         hlichten@llrlaw.com
         Matthew Thomson
         (*pro hac vice* admission to be filed)
         mthomson@llrlaw.com
         **LICHTEN & LISS-RIORDAN, P.C.**
         729 Boylston St., Suite 2000
         Boston, MA  02116
         Phone: (617) 994-5800

         ATTORNEYS FOR PLAINTIFF,
         PUTATIVE FLSA COLLECTIVE, AND
         DCMWA CLASS MEMBERS